# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JUDY C. GOINS, | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) **AND RECOMMENDATION** |
| | ) |
| MICHAEL J. ASTRUE, | ) 1:08CV00289 |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Plaintiff, Judy C. Goins, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on August 25, 2004 (protective filing date,

---

[1] The documents associated with Plaintiff's SSI application are missing from the transcript.

August 17, 2004), alleging a disability onset date of May 1, 2004.[2] Tr. 46; see also Tr. 55. The applications were denied initially and upon reconsideration. Tr. 36, 41. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 34. Present at the hearing, held on April 12, 2007, were Plaintiff and her attorney. Tr. 219.

By decision dated June 26, 2007, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 15. On April 3, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 4, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since May 1, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe combination of impairments: (1) lumbar disc disease; (2) chronic alcohol abuse and (3) hepatitis C virus infection (20 CFR 404.1520© and 416.920©).

Tr. 17. He continued:

---

[2] Plaintiff previously filed a DIB application which was denied at the initial level on February 25, 2003. See Tr. 56. There is no indication that this earlier claim was reopened with the instant applications.

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary level work.

Tr. 18. The ALJ found that Plaintiff was thus unable to perform her past relevant work ("PRW"). Tr. 24.

Plaintiff, born on June 15, 1960, was forty-three years old at the time of her alleged onset of disability, and at the time of the ALJ's decision, was regulatorily defined as "a younger individual age 45-49." See id. (citing 20 C.F.R. §§ 404.1563 and 416.963). The ALJ found that Plaintiff has a limited education and could communicate in English. He added that transferability of job skills was not an issue in the case. Based on these factors, together with Plaintiff's residual functional capacity (RFC), the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. (citing 20 C.F.R. §§404.1560©, 404.1566, 416.960©, and 416.966). Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, from May 1, 2004, through the date of his decision. Tr. 25.

## Analysis

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to perform a function-by-function assessment of her RFC. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[3] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[4]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's

---

[3] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

[4] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404.

4

listing of impairments, (4) has an impairment which prevents PRW, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

5

Issue

RFC

> Social Security Ruling 96-4p, 61 Fed. Reg. 34488-01, explains that:
>
> Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s).

Id. at 34489.

The ALJ first summarized Plaintiff's relatively sparse medical records with their minimal examination findings. See Tr. 19-21. He next discussed her statements, including that she suffered pain equal to nine on a ten-point scale and could sit for only ten minutes. Tr. 22. But the ALJ determined that Plaintiff's "allegations of such severe pain and other symptoms *with resulting functional limitations* are not fully credible or consistent with the objective medical findings." Tr. 23. See also Tr. 22 ("[T]he claimant's allegations of such severe pain are not persuasive."). Cf. Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996) (a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with . . . objective evidence of the underlying impairment"). Plaintiff has not challenged this finding.

Plaintiff alleges that the ALJ erred in failing, as suggested by Social Security Ruling (SSR) 96-8p, 61 Fed. Reg. 34474-01, to perform a function-by-function RFC

6

analysis, especially with regard to her ability to sit.[5] The Ruling provides that the adjudicator must "describe the maximum amount of each work-related activity the individual can perform *based on the evidence available in the case record*." Id. at 34478 (emphasis added). It has been held, however, that "[t]his requirement does not require a detailed function-by-function analysis that Claimant urges. Only if the ALJ found that Claimant's [functional ability] was compromised would the burden of discussion fall on the ALJ." Lewis v. Astrue, 518 F. Supp. 2d 1031, 1043 (N.D. Ill. 2007). See also Banks v. Astrue, 537 F. Supp. 2d 75, 85 (D.D.C. 2008) (finding that SSR 96-8p "does not require written articulation of all seven strength demands").

This issue apparently has not been addressed in the Fourth Circuit, but in the Ninth Circuit, "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ *found neither credible nor supported by the record* is unnecessary." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing SSR 96-8p) (emphasis added). So although the ALJ assesses the claimant's RFC "based on the evidence available in the case record," that evidence includes Plaintiff's own description of her pain and limitations, which the ALJ here considered and found not

---

[5] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Section 404.1567(a).
7

to be credible. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (the ALJ may discount subjective complaints of pain based on credibility determinations).

Under the Ruling, an individual's "exertional capacity" includes the "strength demand" of sitting. 61 Fed. Reg. at 34477. The ALJ first discussed several of Plaintiff's pertinent medical records. See Tr. 19-21. As of May 1, 2004, Plaintiff's date of alleged disability onset, she had not been treated for pain since February 2003. On May 12, 2004, she returned to orthopedist John Krege who had performed her discectomy over two years earlier. See Tr. 19.

Plaintiff complained of low back and left calf pain. See also Tr. 139. She was then taking only over-the-counter pain medication and working part-time. Cf. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (seeking work and working at a job while applying for benefits, are activities inconsistent with complaints of disabling pain). Plaintiff's exam was unremarkable, with negative straight leg raising, and she was able to easily heel and toe walk. X-rays showed narrowing at the L5-S1 level with some sclerosis at the endplates, not unexpected after a discectomy. Dr. Krege believed that Plaintiff was experiencing some nerve root irritation. He gave her samples of Bextra and performed an epidural steroid injection ("ESI"). Tr. 138.

Plaintiff returned the following month. See id. She told Dr. Krege that the ESI had not helped much, but she was taking over-the-counter Advil, which *did* help. Tr. 20. See also Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (the

8

weakness of pain medication is a factor to be considered in assessing the severity of a claimant's pain). The doctor wrote that Plaintiff "wanted to talk about disability," but he could not assign her any more than five to ten percent impairment of her back. Tr. 138. Plaintiff saw Dr. Krege next in July, but not again.

When Plaintiff attended her consultative examination in November, she had not again sought pain treatment. Plaintiff told Dr. Mark Fields that she took Advil for her pain, and that it helped. Tr. 20; see also Tr. 167. As noted by the ALJ, Plaintiff's only "overt" back symptom was tenderness of the thoracic and lumbar paraspinals bilaterally. Tr. 20; see also Tr. 169. Her straight leg raising was positive at forty degrees on the left, and at seventy-five degrees on the right.[6]

Yet Plaintiff had no edema, effusions, erythema, crepitus, cyanosis, warmth, or sensory deficit of her lower extremities. Her gait was normal and she used no assistive device. Plaintiff successfully performed heel and toe stance, squat and rise, and tandem walk. Dr. Fields opined: "[Plaintiff] obviously has some discomfort in her back, which is *subjectively* limiting in her physical abilities to sit, stand, walk, squat and bend at the waist. It is difficult for this examiner to determine on a more objective basis how limiting her pain symptoms are." Tr. 170 (emphasis added); see also Tr. 20.

---

[6] Interestingly, Plaintiff did not again exhibit positive straight leg raising until May 30, 2006, and then on the left, only. See Tr. 194.

It does not appear, after her July 2004 visit with Dr. Krege, that Plaintiff actively sought treatment for her pain until she was referred to the sports medicine practitioners at the Moses Cone Out-patient Clinic in February 2006. Plaintiff told the doctor, Rebecca Bassett, that she had had left leg pain since her discectomy, and that the ESIs had helped. Tr. 198; see also Tr. 192, 196 ("responded to well for several months"). The doctor wrote that Plaintiff worked as a "home care aide" and was "on her feet a lot." Id. Plaintiff also told Dr. Bassett that "[h]er pain is not any worse when she is active *versus sitting or laying.*" Id. (emphasis added). She was taking only Tylenol for her pain.

Dr. Bassett noted that Plaintiff had no limp, and she had some diffuse tenderness in her low back. Plaintiff's back had full range of motion, and she exhibited negative straight leg raising. Although there was a little discomfort with extension, there was none with flexion or lateral movements. Plaintiff's sensation was intact, and she had full strength, without deficit. Tr. 199.

Because Plaintiff had no focal deficits, Dr. Bassett believed that Plaintiff's pain was more musculoskeletal than true nerve pain. The doctor diagnosed chronic back pain with possible recent worsening of symptoms, and no current treatment regimen. She prescribed a prednisone taper and home exercises.

When Plaintiff returned to the clinic in April, she reported that her pain had improved, but only while she was on the medication. Tr. 196. The doctor's exam revealed diffuse back tenderness to palpation and mild left sacroiliac pain. Plaintiff's

back had full range of motion, but with pain on flexion and extension. Her straight leg raising remained negative, sensation was intact, and strength was full. Plaintiff was able to heel and toe walk without difficulty. Her diagnosis was of chronic low back pain with radiation to the left leg, but with "no obvious discogenic signs," id., and no bony difficulties were suspected, Tr. 197. On May 2, Plaintiff's tenderness was improved, and she received a prescription for Elavil for nighttime symptoms. Tr. 195.

The ALJ next discussed Plaintiff's visit of May 30, 2006. See Tr. 21. The exercises and Elavil had helped her pain. Tr. 194. Plaintiff had neither muscle spasms nor tenderness, and had full range of motion with both extension and flexion. At this visit, Plaintiff's straight leg raising was positive, but only on the left, and only when supine, at sixty degrees. In addition, she maintained full strength, her reflexes were two-plus and symmetric, and her sensory was intact. The attending physician told Plaintiff to continue her back exercises and walking program, to continue taking ibuprofen, and to take Tylenol for break-through pain.

Plaintiff returned on July 7, and reported that her pain had improved – at least while she took Elavil. See Tr. 20, 193. But she added that walking and exercising also helped. The doctor increased Plaintiff's Elavil dosage and told her to continue exercising and walking, and to stop smoking.

Plaintiff did not return to the sports medicine clinic for another six months. She then complained to Dr. Karl Fields of continued radicular symptoms into her left leg.

11

Tr. 20, 192. Dr. Fields believed that Plaintiff suffered from a "failed" surgery and, thus, was not "likely to be a good surgical candidate." Tr. 192; see also Tr. 20. He advised Plaintiff to continue with Elavil, over-the-counter medications, walking, and exercises. Finally, Dr. Fields opined, as Plaintiff experienced persistent pain with her PRW, "that she is currently disabled from the type of physical activity that she has done in the past." Id. The ALJ agreed, as Plaintiff's PRW was characterized by being "on her feet all day," with some stooping, kneeling, and crouching. Tr. 24.

The ALJ duly noted Plaintiff's allegations regarding her limitations. Tr. 20 ("she complained of sharp pain at 10/10"; "pain prevented her from sitting . . . more than 30 minutes); 21 ("reported low back pain at 8/10, worse with . . . sitting long periods"); 22 ("She rated her pain as 9/10 in intensity[.]"; "[S]he could . . . sit about 10 minutes[.]"). The ALJ, however, clearly did not believe her statements, and he presented substantial evidence to support his finding that her alleged limitations were not "consistent with the objective medical findings." Tr. 23. Thus, in accord with Ruling 96-8p, the ALJ discussed the objective medical evidence and Plaintiff's symptoms, and tailored his RFC accordingly.

Further, the doctors who expressed opinions as to Plaintiff's limitations did not say that she could not perform extended sitting. And state agency experts opined that Plaintiff could sit for six of eight hours, with normal breaks. Tr. 173, 175. Because Plaintiff did not challenge the ALJ's finding that she overstated her limitations, the court finds that the ALJ's RFC analysis was proper; he complied with

12

the Ruling's instruction to perform the RFC assessment based on the evidence available in the case record; and he committed no reversible error in not separately addressing Plaintiff's ability to sit.

Plaintiff also complains that the ALJ erred in that he did not discuss her ability to "productively engage in work activity in a seated position." Pl.'s Br. at 4. The court, however, fails to follow her reasoning. The court is aware that Ruling 96-8p counsels that, "[i]n assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)[.]" Id. at 34478 (footnote omitted). But the court agrees with the Fifth Circuit Court of Appeals that "[u]sually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." Frank v. Barnhart 326 F.3d 618, 619 (5th Cir. 2003). Accordingly, the court finds no error.

The burden of proof here is on Plaintiff, not the Commissioner. See, e.g., Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (the applicant bears the burden of production and proof during the first four steps of the inquiry). The only evidence that Plaintiff experiences problems with sitting comes from her own statements, and the ALJ's decision not to believe these stands unchallenged. Plaintiff's objective findings fail to support the extent of the limitations she claims. None of the physicians in the record support Plaintiff's claimed limitations. Moreover, "[t]he

13

regulations do not mandate the presumption that all sedentary jobs . . . require the worker to sit without moving for six hours[.]"). Halloran v. Barnhart, 362 F.3d 28, 33 (2nd Cir. 2004). Thus, Plaintiff has provided no basis for remand.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence, and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (docket no. 10) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (docket no. 14) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

WALLACE W. DIXON
United States Magistrate Judge

October 26, 2009